

October 23, 2022

## Declaration of Michael Hlebechuk

I, Michael Hlebechuk, do hereby declare and state, under penalty of perjury and aware that this declaration can be used as evidence in a court of law:

1. That I am a person over 18 and capable and competent to provide the declaration herein.

2. That I am a person in long term recovery that at times has had full disability and have been employed in many roles in the Mental Health System and the peer eco-system, as well as earlier in other fields. I am a trainer and a person experienced with dealing with persons in the state psychiatric hospital, and, after being employed there as an Outreach Specialist, I authored an influential white paper on why the state should have an office of consumer activities and was subsequently hired by the State of Oregon Addictions and Mental Health Division as the Director of the Office of Consumer Activities.

3. During 2012 up to 2017 the year when I resigned my position, I was both part of the Office of Consumer Activities and was involved with the Oregon Consumer Advisory Council, as well as attending to other groups and committees of interest to the peer community. I, at times, served as Chair of the Council, though not during the times described in this declaration.

4. I have served on many committees and attended many state and other events with Mr Ewbank and I have never known Mr. Ewbank to be rude or scare people or threaten their safety or ability to speak freely.  I have known him to have a reputation for, and have seen him ask probing questions that might make people feel uncomfortable at times.

5. When trying to recall why Darcy Strahan made it difficult to work at AMH as a consumer and as a recovering disabled individual, I do remember her instructing us that we were not to tell our stories as consumers and not to share our experiences of recovery.  Nicole Currier and I did so anyway at the time, and

fortunately nothing else was made of it.  I was relieved to be transferred to another supervisor in another department at AMH.

6.  My belief is that this is a serious form of silencing, and otherwise interfered with my work as a member of the Oregon Consumer Advisory Council as well as being an essential part of my job role as the manager of the Office of Consumer Activities and part of the consumer and peer recovery movement.

7. After he was removed from all committees, I had a separate email account with an alias not related to my name and not used for work to communicate with Mr Ewbank.

A long time ago, when I first worked for the state, Bob Nikkel the Deputy Director at the time, told me that I should not be emailing using state email with an outside individual, especially with a person at the time named Dave Romprey who was an advocate, because folks at the state had the ability to look at my emails and they were not private.

I cannot remember the account that I used for offsite email to correspond with Mr Ewbank, though I felt it was necessary.  Otherwise, I would have been at risk of being retaliated against or I would have been in trouble with the brass for having the contact.

The retaliation I feared would be a number of ways, one of which is the way that they used to deal with people they wanted to get rid of.  They would assign them tons and tons of work until they would get tired of doing it all, and then leave.  That is just one strategy, however.  I was concerned that my position was not union and not secure in that I was a manager and not covered by a union contract or protections. I was at serving "at the pleasure of the director" so they wouldn't need cause to just get rid of me.

8.  I do know that Mr Ewbank was a strong advocate for consumer rights and the consumer voice, and was very serious about getting the state to support peer/disabled workers in the system.  I do not know of or remember seeing or reading anything else that might have gotten him in trouble with the AMH administration.

In terms of personal conduct at Council and other meetings, Darcy Strahan, and not Mr Ewbank, would not hesitate to interrupt people speaking and would talk

without being recognized by the chair.  The request to be recognized to speak was an essential part of our meeting decorum and really, all meeting of large groups at the state.  I remember this because it was unusual to have someone interrupt someone who had the floor.

9.  I remember that Darcy Strahan was a stickler for ending the meetings on time no matter how busy the agenda, I remember the phrase from her that was emphatic, "The meeting ends at 4 o'clock and not a minute after!"

10.  Having Mr Ewbank removed seemed to me and others like a warning to the rest of us about speaking out on matters of public concern or on matters of the Council or its role and direction.

11. At one point, after Mr Ewbank was removed or as he was being removed, I remember Darcy Strahan said something about Mr Ewbank having "abusive emails".  I remember talking with her about Mr Ewbank's removal, and she said that that I didn't know what I was talking about, and she said that "If I'd seen what she saw I would not question Mr Ewbank's removal." or words to that effect.

12.  She never pointed out any particular thing that would have justified saying that his emails were "abusive" nor did she give any examples.

13.  I never learned what the reasons of his removal were other than that.

14.  I know that Darcy Strahan and Jeff Emrick had a lot of contact with each other and while I do not have the particulars of their meetings or conversations, I do believe that Jeff provided a lot of support for Darcy and empowered her with his support.  It was well known that they supported each other in various ways at the Division.

15.  As I remember correctly, everyone at the state was directed to send any correspondence from Mr Ewbank to Darcy Strahan or Jeff Emrick.  I don't believe that this specific information was harvested by security.

16. The communication went out to all persons from Admin that there was a legal issue and all files and information on our computers were to be saved and not erased especially having to do with contact with Mr Ewbank or his activities.  This went out from administration in the immediate months following Mr Ewbank's

removal.  No one came around and collected the things on my computer and, after I quit my job in 2017, they emailed me the content of my files.  I discarded those things soon afterward.

17.  Len Ray was the person who from the State, who was Darcy Strahan's supervisor, who decided himself or together with Darcy Strahan I believe, that people were going to only be appointed and approved by the Division to the Council and the Council wasn't going to be in charge of its own process of gaining new members.  That was decided when the when the Council was being officially formed.  This was not consistent with my or others view of the Council and peer empowerment at the time.

18.  Rollin Shelton, a member of the Council and an employee of the Portland State Regional Research Institute and a consumer, also had serious issues with Darcy Strahan respecting his membership on the Council, though I was not aware of the specifics.

19.  I remember that Mr Ewbank was generally handed what I or others might call "a dirty deal".  It was well known by me and others at the Division that Mr Ewbank was "persona non grata" and not welcome at the Division after his removal from all committees.  This limited my contact with him and made it difficult to work on common projects on behalf of the consumers of the state and in Mr Ewbank's region, where he was still active.


The above declaration is true and correct to the best of my knowledge and belief.


s/ *Michael Hlebechuk*

Michael Hlebechuk

Portland OR  October 23, 2022